UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
GAMAL ABDELAZIZ,

                                                    Plaintiff,

    -against-

                                                                              13 CV 7268 (SJ) (VMS)

CITY OF NEW YORK, MILKO MEJIA, Individually,
and JOHN and JANE DOE 1 through 5, Individually (the names
John and Jane Doe being fictitious, as the true names are
presently unknown),

                                                  Defendants.

-------------------------------------------------------------------X


**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT CITY OF NEW YORK'S MOTION TO DISMISS**


                                                          LEVENTHAL & KLEIN, LLP
                                                          *Attorneys for Plaintiff*
                                                          45 Main Street, Suite 230
                                                          Brooklyn, New York 11201
                                                          (718) 722-4100

## Table of Contents

Page

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

PROCEDURAL HISTORY ................................................................................................... 1

STANDARD OF REVIEW .................................................................................................... 1

STATEMENT OF FACTS ..................................................................................................... 3

ARGUMENT .......................................................................................................................... 6

POINT I    PLAINTIFF'S CLAIM BASED ON THE DOCTRINE OF *RESPONDEAT SUPERIOR* LIABILITY SHOULD NOT BE DISMISSED BECAUSE THE DETERMINATION OF WHETHER DEFENDANT MEJIA WAS ACTING WITHIN THE SCOPE OF EMPLOYMENT DEPENDS HEAVILY ON THE FACTS AND IS A QUESTION ORDINARILY FOR THE JURY ........................ 6

POINT II   DEFENDANT MEJIA WAS ACTING UNDER COLOR OF LAW BECAUSE HE INVOKED THE REAL OR APPARENT POWER OF THE NYPD DURING THE INCIDENT THAT GAVE RISE TO PLAINTIFF'S CLAIMS ..................... 9

POINT III  PLAINTIFF VOLUNTARILY WITHDRAWS CERTAIN CAUSES OF ACTION .................................................................................................... 11

CONCLUSION .................................................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)..................................................................................2

*Beachamp v. City of New York*, 3 A.D.3d 465 (2d Dept. 2004).............................................7

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)...................................................................2

*Campos v. City of New York*, 32 A.D.3d 287, (1st Dept. 2006).............................................7

*Cardona v. Cruz*, 271 A.D.2d 221 (1st Dept. 2000) ...............................................................8

*Car-Freshner Corp. v. Getty Images, Inc.*, 822 F. Supp. 2d 167 (N.D.N.Y. 2011).................2

*Chambers v. Time Warner*, 282 F.3d, 147 (2d. Cir. 2002).....................................................3

*Claudio v. Sawyer*, 675 F. Supp.2d 403 (S.D.N.Y. 2009)....................................................10

*Davis v. City of New York*, 226 A.D.2d 271 (1st Dept. 1996)................................................8

*Dedrick v. Sheriff of Columbia County*, 2010 WL 1423102 (N.D.N.Y).................................2

*Devito v. Barrant*, 2005 WL 2033722 (E.D.N.Y.).................................................................6

*Global Network Communications, Inc. v. City of New York*, 458 F.3d 150 (2d Cir. 2006)............2

*Graham v. City of New York*, 2 A.D.3d 678 (2nd Dept. 2003)...............................................7

*Hearst v. City of New York*, 2012 WL 1019977 (E.D.N.Y.).................................................9

*Johnson v. City of New York*, 269 A.D.2d 359 (2nd Dept. 2000)...........................................8

*Mahmood v. City of New York*, 2003 WL 21047728 (S.D.N.Y.)...........................................8

*McAuliffe v. Pomposello*, 2011 WL 4633867 (S.D.N.Y.)...............................................10,11

*Perez v. City of New York*, 1996 WL 103836 (S.D.N.Y.).....................................................8

*Pitchell v. Callan*, 13 F.3d 545 (2d Cir. 1994) ....................................................................10

*Rivera v. La Porte*, 896 F.2d 691 (2d Cir. 1990).................................................................10

*Stavitz v. City of New York*, 98 A.D.2d 529 (1st Dept. 1984) ................................................8

*Stevens v. Kellar*, 112 A.D.3d 1206 (3rd Dept. 2013) .................................................................. 7

*Turk v. McCarthy*, 661 F.Supp. 1526 (E.D.N.Y. 1987) ................................................................ 8

*Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104 (2d Cir. 2008) ...... 1

*West v. Atkins*, 487 U.S. 42 (1988) ............................................................................................ 10

## PRELIMINARY STATEMENT

Plaintiff Gamal Abdelaziz respectfully submits this memorandum of law in opposition to defendant City of New York's motion to dismiss pursuant to FRCP 12(b)(6).

## PROCEDURAL HISTORY

On December 20, 2013, plaintiff commenced this action in the United States District Court for the Eastern District of New York against the City of New York, police officers Milko Mejia and Vincent Mugno, and John and Jane Doe one through ten. On or about June 6, 2014, plaintiff filed an Amended Complaint, adding defendant police officers Joseph Digennaro, George Chin, Richard Benbow and Michael Salice. On or about September 19, 2014, defendants City of New York, Mugno, Digennaro, Chin, Benbow and Salice filed a motion to dismiss pursuant to FRCP 12(b)(6). On or about November 3, 2014, plaintiff filed a Second Amended Complaint that only contained claims against the City of New York, Mejia, and John and Jane Doe one through five. Leventhal Decl., Ex A. On or about December 12, 2014, defendant City of New York filed a motion to dismiss plaintiff's Second Amended Complaint pursuant to FRCP 12(b)(6). The current deadline to complete discovery is April 27, 2015.

## STANDARD OF REVIEW

FRCP 12(b)(6) provides that a court must "accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party." *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008), *cert. denied*, 555 U.S. 1218 (2009). To withstand the motion, the plaintiff's complaint "must contain sufficient factual

1

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* Facial plausibility in this context does not amount to "a probability requirement" rather, it requires a showing of "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted).

Generally, on a Rule 12(b)(6) motion to dismiss, the Court must confine its review to the facts and allegations that are contained in the complaint because "[t]he purpose of Rule 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief *without* resolving a contest regarding its substantive merits." *Global Network Communications, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006); *see Dedrick v. Sheriff of Columbia County*, 2010 WL 1423102, *2, (N.D.N.Y.). "The Rule thus assesses the legal feasibility of the complaint, but does not weigh the evidence that might be offered to support it." *Id.* However, on a motion pursuant to Rule 12(b)(6), "a court may consider the following matters outside the four corners of the complaint without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference in the complaint, are 'integral' to the complaint (and are provided by the parties), or (4) any matter of which the court can take judicial notice for the factual background of the case." *Car-Freshner Corp. v. Getty Images, Inc.*, 822 F. Supp. 2d 167, 172 (N.D.N.Y. 2011). Additionally, the Second Circuit has emphasized that "a plaintiff's reliance on the terms and effect of a document in drafting the

complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion." *Chambers v. Time Warner*, 282 F.3d, 147, 153 (2d. Cir. 2002).

## STATEMENT OF FACTS

On September 24, 2012 at approximately 4:50 p.m., plaintiff Gamal Abdelaziz was lawfully operating his motor vehicle in the parking lot behind a supermarket located at 195-25 69th Avenue, Fresh Meadows, Queens County, New York. Leventhal Decl., Ex A, ¶ 12. A vehicle driven by defendant Milko Mejia pulled behind plaintiff's vehicle and sounded its horn. *Id.* at ¶ 13. In response, Abdelaziz moved his vehicle so that Mejia's vehicle could pass. *Id.* at ¶ 14. Mejia sounded his horn again. In response, Abdelaziz moved his vehicle again. *Id.* at ¶¶ 15-16. At that time, Mejia pulled his vehicle to the side of Abdelaziz's vehicle and stated to him, in sum and substance, "you fucking asshole." *Id.* at ¶ 17. Abdelaziz replied by stating to Mejia, in sum and substance, that Mejia was the "asshole." *Id.* at ¶ 18. After this exchange, Abdelaziz drove his vehicle to the front of the store to pick up his wife. *Id.* at ¶ 19. Before he got to the front of the store, Mejia stopped his vehicle in front of Abdelaziz's vehicle, exited his vehicle, approached Abdelaziz, and cursed at him. *Id.* at ¶ 20. Abdelaziz exited his vehicle and asked Mejia why he was cursing and reminded him that he had moved his vehicle allowing Mejia to pass. *Id.* at ¶ 21. At that time, Mejia identified himself as a New York City Police Department ("NYPD") police officer by displaying his badge. *Id.* at ¶ 22. Abdelaziz, who has an Egyptian accent, responded by saying, in sum and substance, that Mejia's badge didn't give him the right to curse at him. *Id.* at ¶ 23. Mejia then stated to Abdelaziz, in sum and substance, "you're a terrorist piece of shit, go back home." *Id.* at ¶ 24. Asserting his authority as an NYPD officer, Mejia demanded Abdelaziz's car keys and his driver's license. *Id.* at ¶ 25. Abdelaziz responded that he would not give his keys to Mejia. *Id.* at ¶ 26. Mejia then demanded Abdelaziz's driver's

license. *Id.* at ¶ 27. In response, Abdelaziz demanded Mejia's badge number. *Id.* at ¶ 28. Mejia responded by saying "I'm not going to give you shit." *Id.* at ¶ 29.

Mejia then went to his car, and shortly thereafter returned to Abdelaziz's location. *Id.* at ¶ 30. Again, Mejia displayed his police badge and stated, in sum and substance, that his son was in the car. *Id.* In response, Abdelaziz stated, in sum and substance, that it was wrong to show his son that he can curse at people because he has a badge. *Id.* at ¶ 31. Abdelaziz then stated to Mejia that he wanted his badge number so that he could make a complaint. *Id.* In response, Mejia brutally kicked Abdelaziz in his groin, striking his testicles and causing severe pain. *Id.* at ¶ 32. Mejia then repeatedly struck Abdelaziz in the head, causing him to fall to the ground, where Mejia continued to strike him. *Id.* Abdelaziz stood up and attempted to retreat to his car, but Mejia followed him and continued to strike Abdelaziz. *Id.* at ¶ 33. When Abdelaziz attempted to get into his car, Mejia continued to strike him. *Id.* Mejia eventually stopped striking Abdelaziz, returned to his vehicle and called for police assistance on his cellular telephone. *Id.* at ¶ 34. When Mejia called for police assistance, he identified himself as a police officer who was assaulted. *Id.* During the aforementioned telephone call, Mejia was asked if he was requesting a "13," an NYPD code that indicates that a police officer needs assistance. *Id.* at ¶ 35. Mejia responded that he was requesting a "13" and falsely indicated that the situation was "out of control" and the perpetrator was "trying to get away." *Id.* at ¶ 36. NYPD officers responded to Mejia's call and arrived at the location. *Id.* at ¶ 37. When the responding NYPD officers arrived, they spoke only with Mejia and not Abdelaziz, and falsely arrested Abdelaziz based on Mejia's false allegations and Mejia's authority as a police officer. *Id.* at ¶ 38. When Abdelaziz asked why he was being arrested, he was informed that he purportedly "argued with a Sergeant." *Id.* at ¶ 39. Abdelaziz, who was bleeding and otherwise visibly injured and in need

4

of medical treatment from the beating inflicted on him by Mejia, stated that he needed an ambulance. *Id.* at ¶ 40. Abdelaziz's request was ignored. *Id.* at ¶ 41. Abdelaziz was taken in handcuffs to the NYPD 107th precinct. *Id.* at ¶ 42. An ambulance was eventually called, which transported Abdelaziz to New York Hospital in Queens on a long board and in a cervical collar, where he received treatment for his injuries, including facial and neck injuries, and other injuries, including dizziness, bleeding, headaches, back pain and testicular pain. *Id.* at ¶ 43.

Two detectives from, upon information and belief, the NYPD Internal Affairs Bureau, responded to the hospital pursuant to NYPD protocol when a prisoner is injured in custody. *Id.* at ¶ 44. Instead of making efforts to determine if Mejia had committed misconduct, they stated that they were siding with Mejia. *Id.* After Abdelaziz's release from the hospital, he remained in police custody, and was eventually transported to Queens Central Booking pending his arraignment on criminal charges. *Id.* at ¶ 45. Abdelaziz was arraigned the next day in Queens County Criminal Court under docket number 2012QN051677, which contained manufactured and false allegations asserted by Mejia, including the false allegations, among others, that Abdelaziz purportedly punched Mejia in the face and banged on Mejia's car. *Id.* at ¶ 46. The aforementioned allegations were false, manufactured, and created by Mejia to cover up the above mentioned acts of brutality and abuse of authority, and to otherwise avoid punishment for said acts of brutality by the NYPD or other investigative bodies. *Id.* As a result of the manufactured allegations, Abdelaziz returned to court on approximately three occasions. *Id.* at ¶ 47. On January 23, 2013, the criminal charges were sealed pursuant to New York Criminal Procedure Law Section 160.55 after Abdelaziz pled guilty to disorderly conduct, a non-criminal disposition entered pursuant to a plea agreement. *Id.* at ¶ 48.

Abdelaziz continues to suffer from vertigo, dizziness, headaches, neck pain, numbness,

and other ailments arising from Mejia's unprovoked attack, and has been forced to ingest medications and to undergo medical treatment and therapy for his injuries. *Id.* at ¶ 54. As a result of the foregoing, Abdelaziz sustained, *inter alia*, physical injuries which are progressive and apparently permanent, emotional distress, and deprivation of his constitutional rights. *Id.* at ¶ 55.

## ARGUMENT

## POINT I

**PLAINTIFF'S CLAIM BASED ON THE DOCTRINE OF *RESPONDEAT SUPERIOR* LIABILITY SHOULD NOT BE DISMISSED BECAUSE THE DETERMINATION OF WHETHER DEFENDANT MEJIA WAS ACTING WITHIN THE SCOPE OF EMPLOYMENT DEPENDS HEAVILY ON THE FACTS AND IS A QUESTION ORDINARILY FOR THE JURY**

Defendant City of New York has moved, pursuant to Rule 12(b)(6), to dismiss plaintiff's State law claims based on the doctrine of *respondeat superior* liability on the grounds that defendant Mejia was off-duty at the time of the incident that gave rise to this claim and was therefore not acting in furtherance of the duties he owes to his employer. Defendant's Memorandum of Law, p. 13.

As a threshold matter, under New York law, "an employer may be held liable based on a theory of *respondeat superior* … where an employee was engaged in the furtherance of the employer's enterprise at the time of the employee's wrongdoing, and the employer was or could have been exercising some control over the employee's activities." *Devito v. Barrant*, 2005 WL 2033722, *7 (E.D.N.Y.). With regard to police officers, a municipality is not liable for "acts perpetrated by a member of its police force in the course of engaging in a personal dispute, without any genuine official purpose, whether or not the police officer characterizes such

6

conduct as an arrest or incident to arrest." *Stevens v. Kellar*, 112 A.D.3d 1206, 1208 (3rd Dept. 2013) quoting *Campos v. City of New York*, 32 A.D.3d 287, 291-292 (1st Dept. 2006). However, "since the determination of whether an employee's actions fall within the scope of employment depends heavily on the facts and circumstances of the particular case, the question is ordinarily for the jury." *Beachamp v. City of New York*, 3 A.D.3d 465, 466 (2d Dept. 2004).

Indeed, in a matter strikingly similar to plaintiff's case, the New York Appellate Division upheld a trial jury's determination that an off-duty New York City Police Officer was acting within the scope of his employment as a police officer when he was involved in a traffic dispute that turned violent. *Graham v. City of New York*, 2 A.D.3d 678, 679 (2d Dept. 2003). After initially noting that scope of employment determinations are "heavily dependent on factual considerations …ordinarily …for the trier of fact," the appellate court upheld a trial jury's determination that an off-duty New York City Police Officer was acting within the scope of his employment during a traffic dispute when he assaulted the other driver, knocked him to the ground, arrested him and asked a bystander to call 911 and detained the other driver for 20 or 30 minutes until other officers arrived on the scene. *Id.*

Additionally, all of the cases cited in support of defendant City of New York's argument that defendant Mejia was not acting within the scope of his employment at the time of the incident are clearly distinguishable from the facts herein. In each of those cases, a factual determination regarding whether or not a particular defendant was acting within the scope of his employment was made by the trier of fact or the matter was adjudicated via summary judgment because there was no dispute as to material facts. Importantly, none of the cases cited involved a defendant seeking dismissal of a complaint for facial insufficiency pursuant to Rule 12(b)(6).

*See, Turk v. McCarthy*, 661 F.Supp. 1526 (E.D.N.Y. 1987) (summary judgment motion); *Stavitz v. City of New York*, 98 A.D.2d 529 (1st Dept. 1984) (the Court reviewed a judgment that was entered following a jury verdict); *Mahmood v. City of New York*, 2003 WL 21047728 (S.D.N.Y.) (summary judgment motion); *Cardona v. Cruz*, 271 A.D.2d 221 (1st Dept. 2000) (summary judgment motion); *Johnson v. City of New York*, 269 A.D.2d 359 (2nd Dept. 2000) (the Court reviewed a judgment that was entered following a jury verdict); *Davis v. City of New York*, 226 A.D.2d 271 (1st Dept. 1996) (the court reviewed a judgment that was entered following a jury verdict); *Perez v. City of New York*, 1996 WL 103836 (S.D.N.Y.) (summary judgment motion).

Based on the foregoing, this Court should not dismiss plaintiff's complaint pursuant to Rule 12(b)(6) as his allegation that Mejia was acting within the scope of his employment as a New York City Police Officer at the time of the incident is plausibly supported by the following factual allegations: prior to assaulting plaintiff, defendant Mejia identified himself as a police officer, displayed his police badge, and demanded plaintiff's license and car keys, Leventhal Decl. Ex. A., at ¶¶ 22, 25, 27, 30; following his attack on plaintiff, defendant Mejia called for police assistance and identified himself as a police officer who had been assaulted, *Id.* at ¶ 34; when specifically asked during that telephone conversation if he was requesting a "13," an NYPD code that indicates a police officer needs assistance, defendant Mejia responded that he was in fact requesting a "13" and indicated that the situation was "out of control" and the perpetrator was "trying to get away," *Id.* at ¶¶ 35-36; and lastly, when additional NYPD officers arrived at the location following defendant Mejia's call, the responding officers: did not speak with plaintiff; only spoke to their fellow officer, Mejia; and arrested plaintiff based solely on Mejia's communications and directives. *Id.* at ¶ 38.

8

Equally important, discovery has not yet been completed in this matter. Discovery concerning whether the City of New York compensated Mejia for any time period associated with the incident and whether Mejia missed any time from his employment for an injury that the City acknowledged was suffered "in the line of duty" could reveal evidence further supporting the allegation that defendant Mejia was acting within the scope of his employment when the incident occurred. *See Hearst v. City of New York*, 2012 WL 1019977, *6 (E.D.N.Y.) (Court denied summary judgment motion in part because the defendant, an off-duty NYPD Lieutenant who shot his tenant during a rent dispute, was paid overtime for the period during which the shooting took place, and as such, a jury must decide whether the defendant was acting within scope of his employment as a reasonable jury could find that the NYPD ratified his actions by finding that he was on duty and paying him overtime for the time encompassing the shooting, and thus acting within the scope of his employment.)

Based on the foregoing, this Court should deny defendant City of New York's motion to dismiss plaintiff's claim based on the doctrine of *respondeat superior* liability.

### POINT II

### DEFENDANT MEJIA WAS ACTING UNDER COLOR OF LAW BECAUSE HE INVOKED THE REAL OR APPARENT POWER OF THE NYPD DURING THE INCIDENT THAT GAVE RISE TO PLAINTIFF'S CLAIMS

Defendant City of New York has also moved, pursuant to Rule 12(b)(6), to dismiss plaintiff's claim premised on *Monell* liability on the grounds, in part, that defendant Mejia was off-duty and thus not acting under color of law when the incident that gave rise to this claim occurred. Defendant's Memorandum of Law, pp. 9-13. As plaintiff has withdrawn his *Monell* claim in Point III *infra*, the portion of defendant's memorandum seeking to dismiss that claim is moot; notwithstanding, plaintiff submits that the allegations support a finding that defendant

Mejia was acting under color of law during the incident. Notably, defendant Mejia has not moved for dismissal of the § 1983 claims brought against him by plaintiff.

In order to state a claim under § 1983, a plaintiff "must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of law." *McAuliffe v. Pomposello*, 2011 WL 4633867, *3 (S.D.N.Y.) *quoting West v. Atkins*, 487 U.S. 42, 48 (1988).

In the context of an off-duty police officer, although it is clear that "personal pursuits are plainly excluded [from § 1983 litigation] ... there is no bright line test from distinguishing 'personal pursuits' from activities taken under color of law." *Pitchell v. Callan*, 13 F.3d 545, 548 (2d Cir. 1994). "More is required than a simple determination as to whether an officer was on or off-duty when the challenged incident occurred ... liability may be found where a police officer, albeit off-duty, nonetheless invokes the real or apparent power of the police department." *Id.* As such, a court analyzing whether an off-duty police officer was acting under color or law should "look to the nature of the officer's act, not simply his duty status." *Id.* Importantly, off-duty police officers involved in private disputes "will be considered to be acting under color of law if the officer responded by invoking his or her authority." *Claudio v. Sawyer*, 675 F. Supp.2d 403, 408 (S.D.N.Y. 2009). *See also Rivera v. La Porte*, 896 F.2d 691, 696 (2d Cir. 1990) ("Though the dispute that precipitated the arrest was private, the response, including the arrest and the use of excessive force, was unquestionably action under color of law.")

Although defendant Mejia was off-duty at the time of the incident, plaintiff has alleged sufficient facts that illustrate that Mejia clearly responded by invoking his authority as an NYPD officer and was thereby acting under color of law. Indeed, Mejia not only identified himself as a police officer, he displayed his badge, and then demanded plaintiff's driver's license and car

10

keys. Leventhal Decl. Ex. A., at ¶¶ 22, 25, 27, 30. Private citizens do not demand such items from each other following traffic disputes. Furthermore, after Mejia assaulted plaintiff, he telephoned for police assistance, and identified himself as a police officer who needed assistance; Mejia did not call as a private citizen who was involved in a dispute. *Id.* at ¶¶ 34-36. Equally important, when the responding officers arrived, they only spoke with Mejia, whom they knew to be a police officer because they were responding to a "10-13," a call from a police officer in need of assistance. *Id.* at ¶ 38. Those officers then arrested plaintiff without even speaking with him; they relied entirely on Mejia's authority as a police officer, which he invoked during his call for assistance and when he directed plaintiff's arrest. *Id.* *See McAuliffe v. Pomposello*, at *4 (Court denied defendant's motion for summary judgment where an off-duty Metropolitan Transportation Authority Police Department officer had a dispute with a train conductor and thereafter directed other officers to arrest the conductor. In denying the motion, the Court noted that the defendant was "seemingly acting under color of law" when he "directed his fellow officers to arrest [the conductor] ....")

## POINT III

## PLAINTIFF VOLUNTARILY WITHDRAWS CERTAIN CAUSES OF ACTION

Plaintiff voluntarily withdraws the following causes of action: Supervisory Liability under 42 U.S.C. § 1983 (Third Cause of Action), Municipal Liability under 42 U.S.C. § 1983 (Fourth Cause of Action), Negligent Screening, Hiring, and Retention under the laws of the State of New York (Seventh Cause of Action), Negligent Training and Supervision under the laws of the State of New York (Eighth Cause of Action). Accordingly, defendant City of New York's motion as it pertains to those particular causes of action is moot.

## CONCLUSION

For the foregoing reasons, the Court should deny defendants' motion to dismiss plaintiff's claims pursuant to Rule 12(b)(6), and grant plaintiff such other relief that the Court deems just and equitable.

Dated: Brooklyn, NY
       February 20, 2015

                                  LEVENTHAL & KLEIN, LLP
                                  *Attorneys for the Plaintiff*
                                  45 Main Street, Suite 230
                                  Brooklyn, New York 11201
                                  (718) 722-4100

                                  By: _____
                                       JASON LEVENTHAL