UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
GAMAL ABDELAZIZ,

                Plaintiff,

                                                                  13 CV 7268 (SJ) (VMS)

    -against-                                            **MEMORANDUM AND ORDER**

CITY OF NEW YORK, et al.,

                Defendants.
-------------------------------------------------------X
A P P E A R A N C E S

BRETT G. KLEIN PLLC
305 Broadway
Suite 600
New York, NY 10007
*Attorney for Plaintiff*

LEVENTHAL LAW GROUP, PC
45 Main Street
Suite 230
Brooklyn, NY 11201
By: Jason Leventhal
*Attorney for Plaintiff*

NEW YORK CITY LAW DEPARTMENT
100 Church Street
New York, NY 10007
By:    Ben Kuruvilla
*Attorneys for Defendant City of New York*

WORTH, LONGOWORTH AND LONDON LLP
111 John Street
Suite 640
New York, NY 10038
By:    Douglas LaBarbera
*Attorney for Milko Mejia*

JOHNSON, United States District Judge:

Presently before the Court are two motions for summary judgment -- one filed by defendant City of New York (the "City"), and the other by New York City Police Officer Melko Mejia ("Mejia"). Based on the submission of the parties, and for the reasons stated below, the City's motion is DENIED and Mejia's motion is DENIED.

BACKGROUND

The facts and circumstances alleged by plaintiff Gamal Abdelaziz ("Plaintiff or "Abdelaziz") in this action are largely set forth in the Court's Memorandum and Order of April 14, 2016, denying the City's and Mejia's motion to dismiss and are incorporated by reference herein. However, because the parties have since engaged in and completed discovery, the original facts warrant some repetition and the following supplementation.

On September 24, 2012, Mejia, a then-off-duty police officer employed by the New York City Police Department ("NYPD"), was involved in a traffic incident with Abdelaziz, a United States citizen, while driving in the parking lot of a supermarket in Queens, New York. Mejia was in plain clothes and accompanied in his car by his then-five year old son. Mejia made a left turn, attempting to exit the parking lot, whereupon Plaintiff (who was also operating a motor vehicle in the supermarket's lot), moved his vehicle to the right. The two cars passed each other with very little distance between them. Words were exchanged.

There is a dispute as to where each man drove his car at this point. First, the Court notes it is not clear if the cars remained facing opposite direction. Next, Mejia claims that he "proceeded to exit and go home." Plaintiff claims Mejia did not seek to exit the premises but rather stopped his car "ahead of Plaintiff's vehicle," exited and approached Plaintiff in order to continue their row. Conversely, Mejia claims that Plaintiff was first to exit his car, after first tailgailing Mejia (which would presumably require Plaintiff to have made a U-turn with his vehicle). Regardless, each party alleged that the other engaged in hostile language in front of Mejia's child, including, <u>inter alia</u>, Plaintiff allegedly calling Mejia an "asshole," either before or after Mejia allegedly called Plaintiff an "asshole." It was at this point that the incident escalated from words to blows.

Unsurprisingly, the parties' respective version of events cannot be reconciled. Mejia either did or did not do the following: display his shield; initially represent himself to be a police officer; ask Plaintiff for his license, registration and keys; intentionally kick Plaintiff in the testicles; punch Plaintiff to the point of unconsciousness thereafter; detain or restrain Plaintiff; prevent Plaintiff from leaving; call 911 referring to Plaintiff as a "perpetrator" who was trying to escape; and refuse to provide Plaintiff with his shield number, adding, to wit: "I'm not going to give you nothing, you piece of shit, go fucking back home, you piece of fucking terrorist motherfucker."

Likewise, Plaintiff either did or did not: strike Mejia in the face; threaten to put his head through Mejia's car window; pose a danger to Mejia's minor son (seated in the car); and drive erratically. The parties do not even agree on which one of them exited their vehicles first. Ultimately, a host of questions of fact exist that, when resolved, would determine who was the first aggressor in both the oral and physical phases of this altercation.

What is not in dispute is that Mejia called 911, indicated that he was an officer in distress, either asked or told Plaintiff not to leave the scene, struck Plaintiff several times in the head and testicles and was himself the basis for Plaintiff's arrest. Indeed, Plaintiff was arrested and charged with assault, endangering the welfare of a child and harassment. According to the criminal complaint, Plaintiff was the first aggressor, who punched Mejia in the face after pounding on Mejia's door window. Plaintiff ultimately pleaded guilty to disorderly conduct on January 29, 2013. Mejia was transported to the hospital to treatment for abrasions that he claims to have suffered at the hands of Plaintiff who he claims was the first to strike. And although the arrest report states that Mejia alleged "substantial pain," he testified in his deposition that, at the hospital, he was prescribed "some kind of aspirin, either Motrin or Advil or something like that."

## DISCUSSSION

1. **Summary Judgment Standard**

It is well-settled that a party moving for summary judgment has the burden of establishing that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003). Material facts are those that may affect the outcome of the case. See Anderson, 477 U.S. at 248. An issue of fact is considered "genuine" when a reasonable finder of fact could render a verdict in favor of the non-moving party. Id.

In considering a summary judgment motion, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986) (citing Anderson, 477 U.S. at 248). If the Court recognizes any material issues of fact, summary judgment is improper, and the motion must be denied. See Eastway Constr. Corp. v. City of New York, 762 F.2d 243, 249 (2d Cir. 1985).

If the moving party discharges its burden of proof under Rule 56(c), the non-moving party must then "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of his pleading." Anderson, 477 U.S. at 256. Indeed, "the mere existence of some alleged factual dispute between the parties" alone will not defeat a properly

supported motion for summary judgment.  Id. at 247-8.  Rather, enough evidence must favor the non-moving party's case such that a jury could return a verdict in its favor.  Id. at 248; see also Gallo v. Prudential Residential Servs., Ltd., 22 F.3d 1219, 1224 (2d Cir. 1999) ("When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper.").

II. Liability of the City of New York under Respondeat Superior

The Court denied the City's Federal Rule 12(b)(6) motion to dismiss on April 14, 2016.  See Abdelaziz v. City of New YorkAbdelaziz v. City of New York, (SJ) (VMS), 13 CV 7268, 2016 WL 1465355 (E.D.N.Y. Apr. 14, 2016).  The Court denied the motion filed by the City in part because of the fact intensive nature of the case and the concomitant need for discovery.  See id. at *2. Now that discovery has concluded, Plaintiff voluntarily dismissed several claims (to wit: supervisory liability, municipal liability under Monell, negligent hiring and negligent supervision). What remains against the City is a claim of liability under the doctrine of respondeat superior for the state torts of assault and battery lodged against Mejia.

"Under New York law, the doctrine of respondeat superior renders an employer vicariously liable for a tort committed by an employee acting within the scope of his employment."  Mingo v. United States, 274 F. 2d 336, 345 (E.D.N.Y. 2003) (collecting cases).  "Where an employee commits a tort for personal motives

unrelated to the furtherance of the employer's business, the employer is not liable for the tort committed." Id. (citation omitted). The scope of employment rule has been defined as follows:

> [a]n employee's action is are not within the scope of employment unless the purpose in performing such actions is to further the employer's interests, or to carry out duties incumbent upon the employee in furthering the employer's business. Thus, where an employee's conduct is brought on by a matter wholly personal in nature, the source of which is not job related, his actions cannot be said to fall within the scope of his employment.

Mahmood v. City of New York, (SAS), 01 CV5899, 2003 WL 21047728, at *3 (quoting Stavitz v. City of New York, 98 A.D.2d 529 (N.Y. App. Div. 1984)).

In his deposition, Mejia claimed that he would not leave the parking lot because Plaintiff was driving erratically and it was a "very active parking lot" that was "very full" on account of the time of day and its proximity to the school where parents were arriving to collect their children. Therefore, questions of fact surround whether Mejia's use of force was "pursuant to his obligation to the Police Department, or for personal reasons." See Woo v. City of New York, No. 93 CV 7007, (AJP) (HBD), 1996 WL 457337, at *12 (S.D.N.Y. Sept. 6, 1996) (collecting cases and denying summary judgment where plaintiff and an off-duty officer became involved in a traffic altercation-turned-accident and the officer claimed plaintiff exited his car and attempted to assault him with a tire iron, causing the officer to hit plaintiff in the eye with his service weapon).

Mejia also claims Plaintiff saw a "New York City Police Department, Honor Legion" sticker on Mejia's car, which allegedly indicated to Plaintiff that Mejia was

a police officer, and that Plaintiff berated and cursed at him on account of that. Mejia further claims that Plaintiff threatened him and his son and hit his car window. After the altercation, Mejia admits to having called 911, and the record indicates that he did in fact report a "10-13" (officer in need of assistance) in progress, although he testified that the "10-13" code is only appropriate if an officer is "in uniform." Mejia also admits that, at a minimum, he asked Plaintiff not to leave until additional police arrived. Mejia also made notations of the incident in his NYPD memo book because, he alleges, he is "required to" because it is "an integrity requirement." Finally, although Mejia did not himself arrest Plaintiff, Plaintiff was in fact arrested that day.

This City's focus on <u>Mahmood</u> in support of its motion is misplaced. There, the plaintiff honked his horn at an undercover on-duty officer. 2003 WL 21047728, at \*1. The officer exited his vehicle, identified himself as a police officer, and caused plaintiff to pull over to the side of the road, where he dragged him from the car and beat him. <u>Id.</u> No allegation was made that plaintiff was posing a threat to society and needed to be pulled over. Plaintiff was not arrested or charged. <u>Id.</u> The court granted summary judgment in favor of the City, finding, <u>inter alia</u>, that the officer was acting "out of personal rage," and that whether he identified himself as an officer or not was irrelevant because his actions were outside the scope of his duties. <u>Id.</u> at 3. The instant case is less cut and dry because Plaintiff is in fact accused of driving erratically around children, and was in fact arrested and charged with multiple

offenses, one of which resulted in a conviction. Therefore, the City's motion to dismiss the respondeat superior claim against it is denied.

II.     Remaining Claims

All of the remaining arguments presented by the City and Mejia in support of their respective motions rely upon a resolution of the same factual disputes, and, as such, are also not appropriate for summary dismissal.

CONCLUSION

For the foregoing reasons the motions are denied. As previously ordered, the parties shall report to Magistrate Judge Sanket J. Bulsara on April 23, 2018 for jury selection and before the undersigned on April 24, 2018 for trial. Proposed jury instructions and proposed verdict forms, if any, shall be electronically filed by April 12, 2018. SO ORDERED.

Dated: March 29, 2018                            /s/
       Brooklyn, New York              Sterling Johnson, Jr., U.S.D.J.